## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:    GARY S. KATZMANN, JUDGE, TIMOTHY M. REIF, JUDGE,
JANE A. RESTANI, JUDGE**

| | | |
|---|---|---|
| STRATO TECHNOLOGY SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Consol. Court No. 25-00322 3JP, |
| | ) | *et al.* |
| v. | ) | |
| | ) | |
| UNITED STATES, U.S. CUSTOMS AND | ) | |
| BORDER PROTECTION, and RODNEY S. | ) | |
| SCOTT, in his official capacity as Commissioner | ) | |
| of U.S. Customs and Border Protection, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Upon consideration of plaintiffs' application for a temporary restraining order,

defendants' response, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' application is DENIED.


Dated:_____          _____
        New York, New York                         JUDGE

### UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:    GARY S. KATZMANN, JUDGE, TIMOTHY M. REIF, JUDGE,
JANE A. RESTANI, JUDGE**

| | | |
|---|---|---|
| STRATO TECHNOLOGY SOLUTIONS, LLC, et al. | ) ) ) | |
| Plaintiff, | ) ) | Consol. Court No. 25-00322 3JP |
| v. | ) ) | |
| UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO
### PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Consolidated plaintiffs are various companies that challenge the imposition of tariffs under the International Emergency Economic Powers Act (IEEPA).  Their complaints seek invalidation of the tariffs and refunds of any amounts paid pursuant to the challenged IEEPA orders, under 28 U.S.C. § 1581(i), and are substantially similar to complaints in *V.O.S. Selections Inc. v. Trump*, No. 25-00066, and *The State of Oregon v. Trump,* No. 25-00077, currently before the Supreme Court.  On December 12, 2025, Plaintiffs sought a temporary restraining order prohibiting defendants, U.S. Customs and Border Protection (CBP), CBP Commissioner Rodney Scott, and the United States, from liquidating plaintiffs' entries on which IEEPA duties were paid.  They allege that liquidation could have begun as early as December 15, 2025, the next business day after they filed their motion.  ECF 10 at 37.

Defendants respectfully oppose the request because they have repeatedly assured plaintiffs and this Court that they will not oppose or object to the Court's authority to order

reliquidation of plaintiffs' subject entries of merchandise, or to a final decision ordering reliquidation of plaintiffs' subject entries, should the Supreme Court hold the IEEPA duties at issue unlawful. This assurance is identical to the assurance defendants recently made in a different consolidated IEEPA case, *AGS Company Automotive Solutions v.  U.S. Customs and Border Protection*. On December 15, 2025, the Court denied a motion for a preliminary injunction because it concluded that the Government's assurance eliminates any irreparable harm to plaintiffs. *See AGS Company Automotive Solutions v.  U.S. Customs and Border Protection*, Consol. No. 25-00255, slip op. 25-254 (Dec. 15, 2025), ECF 29 at 8 ("Plaintiffs are not at risk of experiencing irreparable harm as a result of liquidation.").

In light of the Court's decision and defendants' identical position here, the key premise of plaintiffs' application for a temporary restraining order dissolves. Plaintiffs' arguments on irreparable harm, balance of the hardships, and public interest all hinge on the idea that without a temporary restraining order suspending liquidation, plaintiffs will no longer be able to obtain refunds after a final decision on the challenged IEEPA orders. *See, e.g.*, ECF No. 10 (Mot.). The Court has already concluded that key premise is incorrect. The extraordinary and drastic remedy of a temporary restraining order is not warranted when it would give plaintiffs no practical relief. It is all the more unwarranted here, where the challenged actions occurred months ago but plaintiffs unreasonably delayed seeking relief from liquidation until the business day before liquidation would begin. And plaintiffs' only argument on the merits, asserting *stare decisis*, is unavailing given the Supreme Court's active consideration of the very tariffs at issue in this case.

The Court should deny plaintiffs' application for emergency relief, just as it denied the motion in *AGS*.

## STANDARD OF REVIEW

The showing for a temporary restraining order is the same as for a preliminary injunction—the moving party must clearly show four factors: "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest." *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019). It is an "extraordinary remedy." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Only when the threatened harm would impair the court's ability to grant an effective relief is there really a need for preliminary relief." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

## ARGUMENT

## I.    Plaintiffs Cannot Establish Likelihood Of Immediate, Irreparable Harm

a.    The Court should deny plaintiffs' application because, as the Court just concluded in *AGS*, plaintiffs "are not at risk of irreparable harm." *AGS,* Consol. No. 25-00255, ECF 29 at 8; *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Plaintiffs argue that there is a "strong possibility that liquidation will foreclose plaintiffs['] remedies." Mot. 6. In other words, plaintiffs' asserted irreparable harm is the purported inability to obtain a refund after a final and unappealable decision because of liquidation. But that asserted harm is nonexistent here because defendants have made very clear—both in this case and in related cases—that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful. The Court in *AGS* held this to be sufficient protection to eliminate the need for an injunction.

4

And as the Court just noted, defendants' assurances are nothing new. *See AGS,* No. 25-00255, ECF 29 at 8, n. 1 (citing the cases we list below, as well as *Learning Resources, Inc. v. Trump*, D.D.C. No. 25-cv-01248, ECF No. 41, and *Axle of Dearborn, Inc. v. Dep't of Com.*, No. 25-091, ECF No. 13). Defendants first made this representation in April 2025, in the *V.O.S.* litigation. *See V.O.S. Selections*, No. 25-066, ECF No. 32 at 42 (Ct. Int'l Trade Apr. 29, 2025) ("[E]ven if future entries are liquidated, defendants do not intend to oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged tariffs if the tariffs are found in a final and unappealable decision to have been unlawfully collected. Such reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest.").

Defendants again represented in May 2025, in a related action, that they "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. Customs & Border Prot.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025). Indeed, defendants stipulated in that case that "they will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties." *Id.*, ECF No. 17 ¶ 2. The point of the stipulation was to "ensure[] that the plaintiffs may obtain judicial relief in the event that the IEEPA duties are found to be unlawful in a final and unappealable decision, while at the same time adopting a more streamlined and administrable procedure." *Id.* ¶ 3.

Most recently, defendants stipulated on December 12, 2025, to nearly identical language in *Popsockets, LLC v. United States, et al.*, No. 25-00379, ECF 7:

> Defendants stipulate that they will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties

and that they will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties.

Defendants are, and have been, willing to make a similar stipulation here.  *See* ECF No. 10 at 58 (referring to the parties' discussions regarding a stipulation).  Just as this was enough in *AGS*, it should be enough here.

      b.     Plaintiffs insist that the preliminary injunction ordered in *In Re Section 301 Cases* should apply here, but they take the Court's order out of context.  Defendants in that case questioned the Court's ability to order reliquidation, which naturally strengthened the showing of harm and teed up the question for resolution.  The Court said as much when it stated, "[u]p until the point when the Government asserted its position that it would seek to preclude reliquidation or refund, Plaintiffs had no reason to seek an injunction."  *In Re Section 301 Cases*,  No. 21-00052, ECF 329, at 13, n.7.  *See also Sumecht NA Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (Government concession that would "judicially estop[] [it] from taking a contrary position regarding the CIT's authority to order reliquidation in this case" defeated a motion for a preliminary injunction to prevent liquidation).

      The Court in *AGS* agreed, pointing out that the government's representations here stand "in stark contrast" to *In re Section 301 Cases*, where the government "contested this court's ability to order reliquidation." *AGS*, Consol. No. 25-00255, ECF 29 at 6 (quoting the Government's opposition to plaintiffs' motion for preliminary injunction in that case).  The Court in *AGS* also pointed out that "the panel in *In re Section 301 Cases* unanimously agreed," as the Court reiterated in *AGS*, "that the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *Id.* (quoting *In Re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021).  This is consistent with the Court's

decision to lift the injunction in those cases and order the Government to reliquidate if plaintiffs were to ultimately prevail, when it became clear that an injunction suspending liquidation was impossible:

> Defendants shall liquidate those entries in the ordinary course and, should the Court find that the [301 duties at issue] have been illegally collected, and should that decision become final and conclusive, including all appeals, Defendants shall reliquidate any Subject Entry in accordance with a final court decision in this case without the assessment of List 3 and List 4A duties or otherwise refund to Plaintiffs such duties, with interest, as provided by law.

*In Re Section 301 Cases*, ECF 408.  This is also consistent with how the Court has approached other tariff cases.  The Court similarly ordered a refund of any Section 232 duties paid on liquidated entries, should plaintiffs have prevailed.  *See PrimeSource Building Prods., Inc. v. United States*, 505 F. Supp. 3d 1352, 1357-58 (Ct. Int'l Trade 2021).

Still, plaintiffs insist there is a "strong possibility" that liquidation "will foreclose plaintiff's remedies."  ECF 10 at 38 (quoting *Target Corp. v. United States*, 134 F.4th 1307 (Fed. Cir. 2025), and citing *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004)).  But the consequences of liquidation in *Target* and *Cemex* derived from different statutes.  *Target* was a case arising first under 28 U.S.C. § 1581(c).  The finality of liquidation in section 1581(c) cases is governed by 19 U.S.C. § 1516a(c), (e), which indicates that liquidation is final unless a party obtains a statutory injunction to ensure liquidation is consistent with the final court decision reviewing the agency's determination.  The Court in *Target* relied heavily on its decision in *Cemex*, a case about a Customs error, in which the finality of liquidation was governed by 19 U.S.C. § 1514(a).  Section 1514(a) precludes the Court from reviewing a challenge to (and ordering reliquidation on) an erroneous decision by CBP unless the statutory protest requirements are met.

As the Court held in *AGS*, the finality of liquidation *here* is governed directly by 28 U.S.C. § 1581(i).  *AGS*, Consol. No. 25-00255, ECF 29 at 7. This is a straightforward challenge under the Administrative Procedure Act to the lawfulness of IEEPA tariffs.  The Court's remedial authority does not derive from the provisions that govern agency liquidation errors.  The Court's authority instead permits it to "order any other form of relief that is appropriate in a civil action, including but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition."  28 U.S.C. § 2643(c)(1).  There is therefore no prohibition on an order requiring CBP to reliquidate entries.  And as the Court held in *AGS*, consistent with established Federal Circuit precedent, where (as here) plaintiffs challenge the legality and constitutionality of Executive Orders issued by the President, a protest pursuant to 19 U.S.C. § 1514 "would be futile because all that Customs is authorized to do is collect the duty," and accordingly the finality of liquidation – which applies only to protestable decisions under 19 U.S.C. § 1514 – does not apply in this case.  *AGS*, Consol. Ct. No. 25-00255, ECF 29 at 6-7 (quotation marks citations omitted).  "Because Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue, … liquidation of the entries at issue is not final under § 1514." *Id.* at 7.

Plaintiffs contend that there is a difference between defendants' reliquidation representation and suspension of liquidation.  Mot. 38-39.  Even if there were, plaintiffs still fail to clearly show irreparable harm.  They have offered no evidence that without a temporary restraining order, this Court will be unable to decide the case or give them an adequate remedy. *See Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996).  It makes little sense to issue the extraordinary and drastic remedy of a temporary restraining order when the Court can ultimately grant an adequate remedy if appropriate, and when preliminary relief would

have no real-world effect for plaintiffs. *See Delaware State Sportsmen's Assoc., Inc. v. Delaware Dep't. of Safety & Homeland Security*, 108 F.4th 194, 200, 205 (3d Cir. 2024).

Plaintiffs have not offered any reason other than liquidation as the basis for their claim of irreparable harm. And because defendants' representation here is identical to its representation in *AGS*, there is no irreparable harm, and that alone is sufficient to deny the application. *See Amazon.com*, 239 F.3d at 1350.

## II.    The Balance of Hardships and Public Interest Favor Defendants

The Court need not reach these factors because plaintiffs have failed to show any irreparable harm. *See AGS* at 8 (citing *Winter*, 555 U.S. at 23-24.). Even if the Court were to consider them, the balance does not tip in plaintiffs' favor. The balance of hardships and the public interest, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), also weigh against a temporary restraining order. Plaintiffs again rely on the Court's order enjoining the Government in *In Section 301 Cases*—an injunction that was ultimately superseded by the Court's later order in that case discussed already. As discussed above, this alleged hardship does not exist: defendants have already committed that they will not object to the Court's power to order reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful. Defendants have also committed to refund any challenged duties paid by plaintiff importers if such duties are found to be unlawful once there is a final, unappealable court decision ordering refund of such duties to plaintiffs.

By contrast, defendants face a very real hardship from an injunction suspending liquidation, as explained in more detail in the CBP declaration filed in *AGS*. As of December 10, 2025, approximately 34 million entries have been filed by over 301,000 importers that are subject to the IEEPA duties challenged in the Supreme Court. *AGS*, Consol. No. 25-00255, ECF

25-1 at ¶ 3.  Approximately 19.2 million remain unliquidated as of December 10, 2025.  *Id.*
Should CBP be enjoined from liquidating entries subject to the challenged IEEPA orders, it
would be tasked with managing an injunction of unprecedented scale and scope.  *Id.* ¶ 4.  The
current system lacks the functionality to automatically prevent the liquidation of these entries,
and CBP would be forced to undertake a highly labor-intensive process that would require
significant resources.  *Id.*  Moreover, approximately 19.8 million of the entries were filed as
informal entries under 19 C.F.R. part 143 (regulations promulgated pursuant to 19 U.S.C. §
1498(a)(1)(A)), and since informal entries liquidate immediately upon payment by the importer
of the duties due upon the entry, CBP does not have a process to prevent the liquidation of
informal entries.  CBP Decl. ¶ 3; 19 C.F.R. § 159.10(a)(1).

In 2021, CBP explained the impossibility of suspending liquidation on the vast scale
required by *In re 301*, which in comparison, was far smaller at 5.5 million unliquidated entries.
*In re Section 301 Cases*, No. 21-00052, ECF 393-1 ¶ 4.  Then, CBP estimated that "it would
require over 40 Import or Entry Specialists at the Centers of Excellence and Expertise (Centers)
working full time" to suspend liquidation.  *Id.* ¶ 6.  And CBP explained that such diversion of
resources would significantly delay every other function of the Centers, including "combatting
transshipment and ensuring that duties are properly assessed and entries are timely liquidated;
conducting Enforce and Protect Act investigations; instituting civil penalties and referring
appropriate matters to Homeland Security Investigations; reviewing prior disclosures;
conducting free trade agreement verifications; discretionary targeting efforts; and processing the
dramatic increase in protests filed in the last year."  *Id.* ¶ 8.

The diversion of resources would be even more crushing now when there are
approximately 19.2 million unliquidated entries.  It is not enough for plaintiffs to say that they

are merely seeking an injunction with respect to their entries; issuing an injunction with respect to these plaintiffs will invariably result in countless other plaintiffs requesting the same. Indeed, other plaintiffs have already filed motions for similar preliminary injunctive relief, and a dozen large law firms have informed undersigned counsel that they intend to do the same on behalf of their clients. *See, e.g.*, *Delta Enter. Inc. v. United States*, No. 25-00396, ECF No. 10 (Ct. Int'l Trade Dec. 11, 2025). The cascading effect of such injunctions threatens the precise harm detailed in the CBP declaration. *See also, e.g.*, *Winter*, 555 U.S. at 24 (cautioning courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991) (considering the aggregate harm of additional injunctions in similar cases).

And plaintiffs' requested injunction is particularly burdensome because it would be superficial only—it would give plaintiffs nothing more than what defendants have already committed to providing. This would be an unprecedented and inequitable use of the Court's equitable powers. It does not serve the public interest to issue an injunction that is unnecessary and not administrable.

Finally, it is inequitable to require CBP to act immediately when plaintiffs have waited until the very last minute to seek a temporary restraining order. According to plaintiffs, their formal entries may have begun to liquidate as soon as yesterday, December 15, 2025 (an allegation for which plaintiffs provide no specific evidentiary support such as specific entries). Yet plaintiffs waited until just one business day prior to request a temporary restraining order, even though other importers filed suit and raised liquidation issues months ago. *See, e.g.*, *V.O.S. Selections*, No. 25-066; *Oregon*, No. 25-077; *Princess Awesome*, No. 25-078. Plaintiffs' delay here underscores the lack of any need for emergency relief. *See Benisek v. Lamone*, 585 U.S.

155, 159 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence."); *Delaware*, 108 F.4th at 206 (concluding that plaintiffs' delay "support[s] denying a preliminary injunction").

## III.    Plaintiffs Have Not Shown Likelihood Of Success On The Merits

Plaintiffs' showing on the merits falls altogether short.  As plaintiffs acknowledge, the merits of the Executive Orders imposing tariffs under IEEPA are squarely before the Supreme Court in *Donald J. Trump v. V.O.S. Selections, Inc.*, No. 25-250 (U.S.), which heard oral argument on November 5, 2025.  Thus, the only merits argument plaintiffs advance in their motion—that the Federal Circuit decision currently on appeal is *stare decisis* (Mot. 35)—fails. *Stare decisis* rests on the premise "that the applicable rule of law be settled."  *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455 (2015).  The lack of a final judgment in *V.O.S.* and the Supreme Court's active consideration of the issues necessarily means that there is no settled rule of law from that case to apply here.  *Id.*; *see Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 627 (Fed. Cir. 1984) (rejecting application of *stare decisis* where the cited decision "had not yet matured into a final judgment []; nor did it ever so mature"); *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1097 (Fed. Cir. 1996) (similar).

Plaintiffs have offered no other reason they are likely to succeed on the merits of their case, and the Court should deny their motion.  *See Amazon.com*, 239 F.3d at 1350.

## CONCLUSION

For these reasons, the Court should deny plaintiffs' application for a temporary restraining order.

DATED: December 16, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            PATRICIA M. McCARTHY
                                            Director

                                            <u>s/ Claudia Burke</u>
                                            CLAUDIA BURKE
                                            Deputy Director
                                            JUSTIN R. MILLER
                                            Attorney-In-Charge
                                            International Trade Field Office
                                            U.S. Department of Justice
                                            Civil Division
                                            Commercial Litigation Branch
                                            PO Box 480, Ben Franklin Station
                                            Washington, DC 20044
                                            (202) 353-9063
                                            claudia.burke@usdoj.gov

                                            *Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,343 words, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Claudia Burke
CLAUDIA BURKE